**In re James D. ROBINSON, Jr., Debtor. SS No. XXX–XX–XXXX.**

**United States of America, Movant,**

**v.**

**James D. Robinson, Jr., The Above–Named Chapter 7 Debtor and Respondent.**

**No. 12–24747.**

United States Bankruptcy Court, W.D. Tennessee, Western Division.

Nov. 21, 2012.

Barbara M. Zoccola, Esq., Memphis, TN, Assistant U.S. Attorney.

George W. Stevenson, Esq., Memphis, TN, Standing Chapter 13 Trustee.

Thomas C. Fila, Esq., John E. Dunlap, Esq., Memphis, TN, for Debtor.

Chontele McIntyre, Esq., Memphis, TN, for Chapter 13 Trustee.

1. See 28 U.S.C. § 157(b)(2)(A) and (G).

2. Cf. FED. R. BANKR.P. 7001(9).

3. Cf. 28 U.S.C. § 1334(e)(1).

James D. Robinson, Jr., Memphis, TN, Chapter 13 Debtor.

United States Trustee, Region 8, Memphis, TN, Office of the U.S. Trustee.

## MEMORANDUM AND ORDER RE BIFURCATED "MOTION FOR DECLARATORY JUDGMENT OR ALTERNATIVELY FOR DISMISSAL OR TERMINATION OF THE AUTOMATIC STAY" FILED BY THE MOVANT, UNITED STATES OF AMERICA, COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

### INTRODUCTION

These bifurcated core proceedings[1] arise out of a "Motion for Declaratory Judgment or Alternatively for Dismissal or Termination of the Automatic Stay" ("the Motion") filed by the Movant, the United States of America (the "U.S.A."), seeking, inter alia, a declaratory judgment[2] regarding (1) whether the automatic stay created by operation of law under 11 U.S.C. § 362(a) applies to postpetition collection and enforcement efforts arising out of two prepetition Federal criminal restitution judgments against the above-named Debtor/Respondent, James D. Robinson, Jr. ("Debtor"), (2) whether the § 362(a) automatic stay temporarily protects "property of the estate" created by operation of law under 11 U.S.C. § 541(a) notwithstanding the provisions of 11 U.S.C. § 362(b)(1) and (4) and 18 U.S.C. § 3613[3], or alternatively, (3) whether the U.S.A. "for cause" should be granted relief from the automatic stay under 11 U.S.C. § 362(d)(1) and FED. R. BANKR.P. 4001(a)[4] As will be discussed be-

4. Parenthetically, the court notes that the U.S.A. has not filed a combined or separate motion under 11 U.S.C. § 554(b) and FED. R. BANKR.P. 6007(b) seeking an abandonment of

low, the Debtor[5] objects to portions of the relief sought by the U.S.A.

Based on consideration of the case record as a whole including the four trial exhibits and statements of counsel for the U.S.A. and the Debtor, the following shall constitute the court's findings of fact and conclusions of law in accordance with FED. R. BANKR.P. 7052.[6]

## BACKGROUND FACTS, JUDICIAL HISTORY, AND DISCUSSION

Although the parties have a difference of opinion regarding portions of the outcome of this bifurcated motion, the relevant background facts and judicial history are not in substantial dispute, have been stipulated to by the parties,[7] and are briefly summarized as follows. On November 27, 1996, the Debtor plead guilty to criminal violations under 18 U.S.C. §§ 1341 and 1342 for mail fraud and aiding and abetting that occurred on or before March 21, 1993. The Order of Judgment in the criminal case was entered in the United States District Court for the Western District of Tennessee, being Case No. 2:95CR20252–001, by District Judge Jon Phipps McCalla on November 27, 1996. The Order imprisoned the Debtor for 97.5 months, provided for three months of supervised release after his release from imprisonment, and also directed criminal restitution payments totaling $286,875.00 to be paid "in full immediately."

On March 4, 1997, the Debtor plead guilty to a second set of criminal violations under 18 U.S.C. §§ 1343 and 1342 for wire fraud and aiding and abetting. The Order of Judgment in the criminal case also was entered in the United States District Court for the Western District of Tennessee, being Case No. 2:96CR20161–001, by Judge Julia Smith Gibbons on March 4, 1997. The Order imprisoned the Debtor for 24 months and also directed additional criminal restitution payments totaling $100,000.00 to be paid "in full immediately."

On May 7, 2012, the Debtor filed, among other documents, a chapter 13 petition, a proposed repayment plan, schedules, and statement of affairs. Due to a subsequent sua sponte case recusal order, this chapter 13 case was thereafter reassigned to this court. As of the commencement of this chapter 13 case, the Debtor had paid $7,779.44 of the first criminal restitution judgment and only $200.00 towards the second criminal restitution judgment. From December 8, 1998, through October 20, 2005, the Debtor made regular payments on the first criminal restitution balance for amounts between $25.00 and $300.00.[8] No payments were received by

---

"property of the estate" and also that the Chapter 13 Trustee is not a named Respondent in the instant motion.

5. 11 U.S.C. § 101(13A) defines the term "debtor" to mean a person concerning which a case under title 11 has been commenced.

6. Issues involving whether the pending U.S.A. motion to dismiss this case, the Chapter 13 Trustee's motion to dismiss this case and his objection to confirmation of the chapter 13 plan, and the Debtor's motion to convert the chapter 13 case to a case under chapter 11 and the U.S.A.'s objection thereto will be dealt with later in separate orders.

7. Four joint exhibits were presented to the court on November 20, 2012: Exhibit # 1, United States Department of Justice's payment history regarding the criminal restitution judgments; Exhibit # 2, the November 27, 1996 Judgment; Exhibit # 3, March 4, 1997 Judgment; and Exhibit # 4, the Debtor's chapter 13 schedules.

8. See U.S.A. attached Exhibits A and B to the U.S.A.'s "Motion for Declaratory Judgment. . . ." These exhibits provide the payment history by the Debtor on the criminal restitution balances, as recorded in the U.S. Department of Justice's Consolidated Debt Collection System.

the U.S.A. after October 20, 2005, except for an applied involuntary payment of $4,006.08, which represents an April 2012 intercepted tax refund later identified in the Debtor's Schedule B herein. Only three payments were made by the Debtor on the second criminal restitution balance with the last payment occurring on September 20, 2006.

In this chapter 13 case, the Debtor listed assets in his Schedule B that include, among other properties, an IRA account valued at $47,000.00, a tax refund valued at $4,500.00, and three automobiles: a 2006 Highlander valued at $6,000.00, a 2001 Solara valued at $2,000.00, and a 1999 Infiniti I30 valued at $900.00. Debtor claimed exemptions in Schedule C totaling $57,650.00. Specifically, the Debtor claimed the full value of the IRA account as exempt under TENN. CODE ANN. § 26–2–111(1)(D) and claimed an exemption of $1,500.00 in the 2006 Highlander under TENN. CODE ANN. § 26–2–103. The United States Department of Justice is listed as a general unsecured creditor under the Debtor's Schedule F with a claim of $283,101.00 [9]. Schedule I reflects that the Debtor is employed in sales by a local Memphis automobile dealership for seven years earning a monthly income (commissions) of $4,983.33. His Statement of Affairs in Question 4 and Schedule F identify the criminal restitution judgments entered against the Debtor in the United States District Court for the Western District of Tennessee.

On June 26, 2012, the U.S. Attorney, on behalf of the U.S.A., filed the instant "Motion for Declaratory Judgment or Alterna-

tively for Dismissal or Termination of the Automatic Stay." This motion seeks, inter alia, to have the automatic stay under 11 U.S.C. § 362(a) judicially declared inapplicable to the U.S.A.'s efforts to collect and enforce the prepetition criminal restitution judgments against the Debtor under 11 U.S.C. § 362(b)(1) and 18 U.S.C. § 3613(a). The U.S.A. cites and relies upon *Bryan v. Rainwater*, 254 B.R. 273, 278 (N.D.Ala.2000); *In re Johnson*, Case No. 04–11494, slip op. (Bankr.S.D.Ala. Oct. 14, 2006); and *Barnette v. Evans*, 673 F.2d 1250, 1251 (11th Cir.1982). The U.S.A. proceeds on two alternative theories: (1) this case should be dismissed due to the Debtor's alleged bad faith case filing arising from an asserted attempt to delay the collection and enforcement of the pre-petition criminal restitution judgments and (2) if the automatic stay is applicable, the U.S.A. requests the court to terminate the § 362(a) automatic stay as to *all* assets of the Debtor but particularly to allow for the enforcement and execution on the Debtor's IRA account and two of the Debtor's three automobiles. On September 14, 2012, the Debtor objected to portions of the U.S.A.'s instant motion.

On July 5, 2012, the Chapter 13 Trustee filed an objection to the Debtor's chapter 13 plan and pursuant to FED. R. BANKR.P. 3015(f) and also a separate Motion to Dismiss this case under 11 U.S.C. § 1307(c) stating that the Debtor's aggregate unsecured debts exceeds the statutory debt limitations of 11 U.S.C. § 109(e). These proceedings are pending and will be addressed later. Upon being noticed of the

---

**9.** See 11 U.S.C. § 523(a)(13). A bankruptcy discharge does not discharge an individual debtor from any debt for any payment of an order of restitution issued under title 18, United States Code. Likewise, a bankruptcy discharge does not discharge a valid lien. 11 U.S.C. § 524(a); *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886); *Johnson v. Home State Bank*, 501 U.S. 78–83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). By virtue of the recordation of the two Orders of Judgment in the criminal case, the U.S.A. is a lien creditor.

Chapter 13 Trustee's position, the Debtor moved to convert the chapter 13 case to a case under chapter 11, which does not have the same debt limitations. Debtor's motion to convert to chapter 11 under § 1307(f)–(g) also is pending and will be decided later.[10]

### Application of the Automatic Stay

The filing of a bankruptcy petition operates as a stay applicable to "all entities" as defined in 11 U.S.C. § 101(15) except under circumstances expressly enumerated in § 362(b) of the Bankruptcy Code. 11 U.S.C. § 362(a) and (b). This statutory stay under § 362 is referred to as the "automatic stay." The automatic stay, in essence, is akin to a preliminary injunction; it does not last forever. *See* 11 U.S.C. § 362(c)–(d) and § 524(a). Specifically, the automatic stay operates to statutorily stay eight expressly enumerated acts:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against *the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against *the debtor* or against *property of the estate,* of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of *property of the estate* or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against *property of the estate;*

(5) any act to create, perfect, or enforce against *property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against *the debtor* that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against *the debtor:* and

(8) the commencement or continuation of a proceeding before the U.S.A. Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. § 362(a) (emphasis added). As emphasized, certain acts against *the debtor,* in personam, and *property of the debtor* are stayed, and other certain acts against *property of the estate* also are separately stayed.

 The commencement of a bankruptcy case also creates an "estate" by operation of law under § 541(a) that includes all legal and equitable interests of the debtor in property, wherever located and by whomever held. *See* 11 U.S.C. §§ 541, 1115, and 1306. Under § 542(a). *property of the estate* pursuant to § 541 is turned over and delivered to the trustee (or chapter 11 debtor-in-possession). It is emphasized here that *property of the estate* is, thus, divested from the "debtor"—*i.e.,* the property is no longer "property of the debtor," but instead is "property of the estate." The "estate" becomes a separate

---

**10.** See *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)(individual debtor not engaged in business is eligible for relief under chapter 11).

entity from the debtor. *See, for example, Ohio v. Kovacs,* 469 U.S. 274, 285 n. 12, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). The bankruptcy trustee, not the debtor, is the representative of the estate. § 323(a)–(b). The scope of the § 541(a) "estate" is extremely broad. It comprises, as noted, all the debtor's prepetition legal or equitable interest in property as of the commencement of the case including properties claimed as exempt, properties subject to liens, causes of action, etc. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). As mentioned above, the trustee (or chapter 11 debtor-in-possession) is the statutory representative of the § 541(a) estate and becomes the statutory fiduciary accountable for administering *property of the estate*— not the debtor. *See* 11 U.S.C. §§ 323, 704, 1106, and 1302. "It is this central aggregation of property that promotes the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, *and* the equality of distribution of assets among similarly situated creditors...." 5 Collier on Bankruptcy ¶ 541.10. (16th ed. 2012) (emphasis added).

> The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors. Our decisions lay great stress upon this feature of the law-as one not only of private but of great public interest in that it secures to the unfortunate the debtor, who surrenders his property for distribution, a new opportunity in life.

*Stellwagen v. Clum,* 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918).

The automatic stay separately impacts each *the debtor,* in personam, *property of the debtor,* and, particularly important here, *property of the estate* as explained under § 362, but the statutory impact may not necessarily be consistent among the three as the separately enumerated provisions of § 362(a) explain. For example, subsections (a)(1), (6), and (7) of § 362 only apply to *the debtor.* Furthermore, subsections (a)(3) and (4) of § 362 only apply to *property of the estate,* and § 362(a)(5) only applies to *property of the debtor.* Finally, § 362(a)(2) applies to both *the debtor* and *property of the estate.* Similarly, the exceptions to the § 362(a) automatic stay under § 362(b) impact each the debtor, property of the debtor, and *property of the estate;* and, also similarly, the impact may not be consistent among the three. For example, the automatic stay does not stay the commencement or continuation of a civil action or proceeding of the collection of a domestic support obligation from *property that is not property of the estate* under § 362(b)(2)(B) (in essence, allowing a civil action against *property of the debtor* that is not *property of the estate* ). As demonstrated, application of the automatic stay and the exceptions to the automatic stay must be carefully scrutinized by the courts on a case-by-case basis to assure that the correct entity, the debtor or the estate, has the intended statutory protection of the automatic stay.

In this chapter 13 case, the court is confronted with a broad threshold question, as presented by the U.S.A., regarding whether the U.S.A. is even subject to the automatic stay when seeking to collect and enforce its criminal monetary penalties, specifically here, the criminal restitution judgments. The U.S.A., through the Ten-

nessee-(W) U.S. Attorney, asserts that automatic stay does not apply to the U.S.A.'s actions to collect and enforce its criminal restitution judgments against the Debtor, in personam, and also to collect and enforce on the restitution judgments from "property of the estate." The U.S.A.'s assertions rely on the § 362(b)(1) exception to the automatic stay. "The filing of a [bankruptcy] petition ... does not operate as a stay under [§ 362(a) ] of the continuation of a criminal action or proceeding against *the debtor.*" 11 U.S.C. § 362(b)(1) (emphasis added).

Interpretation of the § 362(b)(1) exception has varied among the lower federal courts. Interpretational differences have focused on whether the exception is an absolute allowance of all criminal related actions or whether a creditor's actions are excepted only when it proceeds in good faith in a criminal action rather than to simply collect a debt. *See, for example,* U.S. v. Troxler Hosiery Co., Inc., 41 B.R. 457 (D.C.N.C.1984) (enforcement against debtor or property of the estate is excepted from the automatic stay); *Bryan v. Rainwater,* 254 B.R. 273 (N.D.Ala.2000) (criminal proceedings even to collect, assess, or recover a claim are not subject to the automatic stay); *In re Bibbs,* 282 B.R. 876 (Bkrtcy.E.D.Ark.2002) (automatic stay does not apply to enforcement of orders to pay fines and restitution); *Hucke v. State of Oregon,* 992 F.2d 950 (9th Cir.1993) (collections efforts violate the stay but a proceeding not to collect does not) *overruled by Gruntz v. Los Angeles County (In re Gruntz),* 202 F.3d 1074, 1086–1087 (9th Cir.2000) (en banc) ("[I]n the case of the automatic stay, Congress has specifically subordinated the goals of economic rehabilitation and equitable distribution of assets to the states' interest in prosecuting criminals."); *In re Blair,* 62 B.R. 650 (Bkrtcy.N.D.Ala.1986) (the State does not have free rein to collect a criminal claim

against real property that is "property of the estate"); *In re Washington,* 146 B.R. 807 (Bkrtcy.E.D.Ark.1992); (collection efforts including arrest or incarceration for failure to pay restitution or fine are stayed); *In re Barboza,* 211 B.R. 450 (Bkrtcy.D.R.I.1997) (if sole objective is to collect restitution, proceedings may violate automatic stay).

 The analysis of the § 362(b)(1) exception begins with analysis of the statutory text to determine whether the plain language of the statutory exception unambiguously reveals Congress' underlying intent given the text's context. *U.S. v. Colasuonno,* 697 F.3d 164, 2012 WL 4840715 (2nd Cir.2012); *see Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "Only if we discern ambiguity do we resort first to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history." *Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 423 (2d Cir.2005); *see also Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33, 47, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008). "The drafting of the exceptions is precise and intentional and must be carefully considered in light of the inclusive nature of section 362(a)." 3 Collier on Bankruptcy ¶ 362.05 (16th ed. 2012); *see also Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elc. Co.,* 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (exceptions to Bankruptcy Code are done clearly and expressly). Exceptions to the stay should be read narrowly. *Id.* (citing *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581 (9th Cir.1993)).

 The recent opinion of *U.S. v. Colasuonno,* 697 F.3d 164 (2nd Cir.2012), thoroughly and correctly interprets the plain language of the § 362(b)(1) excep-

tion; and this court agrees with this interpretation.

> [F]or for purposes of § 362(b)(1), the criminal action did not end when the judgment of conviction became final. Rather, the action continued through satisfaction of the judgment because all duties imposed on the defendant, as well as the court's authority to hold the defendant to account for those duties, derive from, and in that respect continue, the original criminal action. To hold otherwise would be to ignore the fact that the purpose of a criminal action is not simply to charge a defendant with criminal conduct or to try him on such charges. It is to punish the defendant for offenses committed against the public. *See Black's Law Dictionary* 34. Although a criminal action may commence with a charge, it continues through the range of pre-trial conferences and hearings, through trial itself, and, where guilt is found, through all the proceedings that determine sentence, provide for compliance with sentence, and address violations of sentence. Thus, the language of § 362(b)(1) unambiguously signals Congress's intent to exempt all parts of the process aimed at punishing a defendant for criminal conduct from any interruption by the Bankruptcy Code's automatic stay.

*U.S. v. Colasuonno,* 697 F.3d 164 (2nd Cir.2012). A criminal proceeding primarily serves public policy by determining whether a person is guilty of crime and needs to be punished and rehabilitated. These penal and rehabilitative functions can result in the guilty defendant being incarcerated and/or subject to criminal monetary penalties (e.g., restitution and fines) and/or other probationary actions. These functions provide the basis for why Congress excepted criminal proceedings from the automatic stay. § 362(b)(1). "The bankruptcy laws are not a haven for criminal offenders but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed against *the debtor* [in personam] in spite of bankruptcy." (emphasis added). H.R. No. 595, 95th Cong. 1st Sess. at 342 (1977), 1978 U.S.C.C.A.N. 5963, 6299; S.R. Rep. No. 989, 95th Cong., 2d Sess. at 51 (1978), 1978 U.S.C.C.A.N. 5787, 5837.[11]

Though the bankruptcy courts clearly are not a haven for criminal offenders, the analysis of the § 362(b)(1) exception, however, does not end there. The language of the exception expressly and very clearly excepts criminal actions and proceedings against *the debtor,* in personam, from the automatic stay but makes no mention of criminal actions and proceedings to enforce and collect criminal restitution judgments against *property of the estate* created under § 541(a). As discussed earlier, the language of subsections (a) and (b) of § 362 specifically discusses application of the automatic stay and the related exceptions to *the debtor, property of the debtor,* and *property of the estate.* The plain language of these subsections excepts criminal actions and proceedings against *the debtor,* in personam, from the automatic stay but does not necessarily or ipso facto except criminal actions and proceedings to collect, enforce, and recover *prop-*

---

11. It also is parenthetically noted that state criminal proceedings against debtor/defendants, in personam, generally are excepted from the automatic stay under 11 U.S.C. § 362(b)(1). Federal interference in state criminal proceedings is disfavored. *See Younger v. Harris,* 401 U.S. 37, 54–55, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)(requiring bad faith, harassment, or other unusual circumstances to justify equitable relief); H.R.Rep. No. 95–595 at 342 (1977), as reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6299.

*erty of the debtor* and/or *property of the estate.*

Regarding the § 541(a) *property of the estate,* it is emphasized that the district courts of the United States have **exclusive jurisdiction** over such property, wherever located, when a case under title 11 is commenced. *See* 28 U.S.C. § 1334(e)(1). In the United States District Court for the Western District of Tennessee, and the other federal judicial districts, this exclusive jurisdiction and authority have been referred to the bankruptcy judges for this Judicial District along with all actions, matters or proceedings arising under title 11. 28 U.S.C. §§ 1334 and 157(a); Miscell. Order No. 84–30 (W.D.Tenn. 1984). Simply put, upon commencement of a case under title 11, the bankruptcy judges have exclusive authority over, among other things, *property of the estate* under § 541(a). 28 U.S.C. §§ 1334(e)(1) and 157(a). All matters affecting *property of the estate* must begin with the presiding bankruptcy court. To protect this exclusive jurisdiction, subsections(a)(2), (3), and (4) of § 362 operate as a stay against "all entities" from enforcing a prepetition judgment against *property of the estate,* obtaining possession of *property of the estate,* exercising control over *property of the estate,* or creating, perfecting, or enforcing any lien against *property of the estate.* Only actions expressly excepted under § 362(b) are not subject to this automatic stay.

As noted earlier, § 362(b)(1) does not expressly exclude from the automatic stay criminal actions or proceedings impacting *property of the estate;* but, based on the plain language reading of § 362(b)(1), criminal actions and proceedings against *the debtor,* in personam, may commence and continue to assure the penal and rehabilitative functions of those actions and proceedings are fostered. However, criminal actions and proceedings seeking to collect and enforce a judgment against *property of the estate,* obtaining possession of *property of the estate,* exercising control over *property of the estate,* or creating, perfecting, or enforcing any lien against *property of the estate* are temporarily stayed from continuing and commencing to assure that similarly situated creditors receive an equitable treatment/distribution from *property of the estate* and the bankruptcy trustees are afforded a reasonable period of time to investigate the financial affairs of the debtors and the priority and validity of asserted claims of creditors.

In summary, the automatic stay does not stay a criminal court from exercising its jurisdiction and authority to commence and continue a criminal action or proceeding against *the debtor,* in personam, that arises out of a verdict against *the debtor,* in personam. Further, it does not stay that criminal court from sentencing *the debtor*/criminal defendant, even if criminal monetary penalties result. The automatic stay also does not stay the criminal court from determining (or modifying) the amount of restitution to be paid to victims and formulating a court imposed payment schedule to be paid by the guilty defendant in accordance with 18 USC § 3663 or § 3663A. Additionally, it does not stay the criminal court from correcting, appealing, modifying, amending, or adjusting the criminal restitution amount or judgment against the debtor, in personam, in accordance with 18 U.S.C. § 3664(*o*). Most importantly here, it is noted that the automatic stay does not stay a criminal court upon default of criminal restitution by *the debtor*/criminal defendant from revoking probation or a term of supervised release, modifying the terms or conditions of probation or a term of supervised release, resentencing *the debtor*/criminal defendant, holding *the debt-*

or/criminal defendant in contempt of court, entering a restraining order or injunction, accepting a performance bond, entering or adjusting to a payment schedule, or taking any other action necessary to obtain compliance with the order of restitution as long as such actions do not impact *property of the estate.* *See* 18 U.S.C. § 3613A. However, the automatic stay does temporarily stay actions and proceedings by the criminal court that attempt to take possession of or control *property of the estate* including ordering the sale of such property, creating, perfecting, or enforcing a lien against such property, garnishing such property including earnings or income of the defendant that become *property of the estate* under §§ 1115 and 1306, ordering turnover of such property, or any other action impacting the bankruptcy court's exclusive jurisdiction over *property of the estate.* This result fulfills two bankruptcy principles: 1) criminal debtors are not provided a haven to avoid prosecution of their crimes and 2) similarly situated creditors receive equitable treatment and distributions of *property of the estate.* The U.S.A. may penalize and rehabilitate the criminal debtor, in personam, but such actions by the U.S.A. ordinarily are limited when penalizing the debtor also extends to penalizing other honest and good faith creditors from receiving distributions from *property of the estate.*

 The foregoing discussion regarding *property of the estate* and the automatic stay becomes for naught if Federal law elsewhere (*e.g.,* title 18 law) routinely trumps the bankruptcy law, its related title 28 provisions, and its underlying Congressional goals. U.S.A. asserts that 18 U.S.C. § 3613 allows a judgment of restitution to be enforced against *property of the debtor*

notwithstanding any other Federal law including the Bankruptcy Code.[12] "Notwithstanding any other Federal law ..., a judgment imposing [restitution] may be enforced against all property or rights to property of the person [ordered to pay restitution]." 18 U.S.C. § 3613(a) (substituting "a fine" for "restitution" and "fined" for "ordered to pay restitution" as directed by 18 U.S.C. § 3613(f)). This law is subject to several exceptions that are inapplicable to the Bankruptcy Code. This law is powerful and far-reaching; however, this court finds that 18 U.S.C. § 3613(a) does *not* allow the order of restitution to be routinely enforced against *property of the estate,* absent authorization of the bankruptcy court. This law expressly allows for enforcement of the order of restitution against *property of the debtor,* but, as discussed earlier, *property of the debtor* and *property of the estate* are separate legal terms of art that represent the property of two separate and distinct entities. Therefore, the U.S.A. may enforce an order of restitution against the debtor, in personam, and *property of the debtor* notwithstanding the Bankruptcy Code and 28 U.S.C. § 1334(c)(1); however, the Bankruptcy Code's automatic stay provisions under § 362(a) may not be ignored and does temporarily stay any attempts by the U.S.A. to encroach upon *property of the estate* without prior authorization of the bankruptcy court.

This distinction among these terms of art, the *debtor, property of the debtor,* and *property of the estate,* is nothing new. Since the enactment of the *Bankruptcy Reform Act of 1978* on November 6, 1978, the Bankruptcy Code and its related title 28 provisions distinguish among these

---

12. The jurisdictional provisions of 28 U.S.C. § 1334(e)(1) are not part of title 11 (*i.e.,* the Bankruptcy Code).

three terms throughout their voluminous sections and subsections.

The court now will engage in a sampling of these distinctions to briefly demonstrate Congress' intent to make these legal terms have different meanings. For example, the *Bankruptcy Abuse Prevention and Consumer Act of 2005* ("BAPCA") added subsection § 362(c) to the automatic stay provisions. Understanding the dichotomy among the debtor, property of the debtor, and property of the estate, Congress enacted § 362(c)(3): "the stay under [§ 362](a) with respect to any action taken with respect to a debt or property securing such debt ... shall terminate with respect to *the debtor* on the 30th day after the filing" of the most recent case if a prior case was dismissed within one year. 11 U.S.C. § 362(c)(3) (emphasis added). *See, for example, In re Johnson*, 335 B.R. 805 (Bankr.W.D.Tenn.2006). The plain reading means the automatic stay terminates after 30 days as regards debts with respect to *the debtor, in personam,* but more importantly it goes on to terminate the stay as regards property securing such debt with respect to *the debtor,* which is better articulated as *property of the debtor. See In re Scott–Hood*, 473 B.R. 133 (Bankr.W.D.Tex.2012).

Comparing § 362(c)(3) to § 362(c)(4) furthers this distinction because Congress intended the entire automatic stay in § 362(a) to not go into effect upon the commencement of a bankruptcy case where there were two or more cases dismissed within the prior year. 11 U.S.C. § 362(c)(4)(A)(i). Had Congress under § 362(c)(3) wanted the automatic stay to terminate as to both *the debtor* and *property of the estate,* it would have simply used the language of § 362(c)(4), but it did not because it deferentially saw the need to protect *property of the estate* not securing a debt under the circumstances set forth in § 362(c)(3). *See In re Holcomb,* 380 B.R. 813 (10th Cir. BAP 2008); *In re Jumpp,* 356 B.R. 789 (1st Cir. BAP 2006); *In re Murray,* 350 B.R. 408 (Bankr. S.D.Ohio 2006); *see also In re Reswick,* 446 B.R. 362 (9th Cir. BAP 2011) (representing an alternative minority approach).

Another area of bankruptcy law that makes this important distinction regards the doctrine of judicial estoppel and the role of a bankruptcy trustee acting in his/her capacity under § 323(a) and (b), which makes the trustee (or debtor in possession for a chapter 11 case) the "representative of the estate" and also gives the trustee the capacity to sue and be sued. Where a debtor fails to disclose, for example, a cause of action or a lawsuit in the bankruptcy schedules, the debtor may be subsequently barred by the doctrine of judicial estoppel from pursuing the cause of action or lawsuit in a later court proceeding. *See, for example, In re Johnson,* 345 B.R. 816 (Bankr.W.D.Mich.2006). However, judicial estoppel does not bar a bankruptcy trustee from asserting the same claim on behalf of the bankruptcy estate. *See, for example, Stephenson v. Malloy,* 700 F.3d 265 (6th Cir.2012), *Reed v. City of Arlington,* 650 F.3d 571, 578–579 (5th Cir.2011) (en banc); *Eastman v. Union Pac. R.R. Co.,* 493 F.3d 1151, 1155 n. 3 (10th Cir.2007); *Parker v. Wendy's Intl., Inc.,* 365 F.3d 1268, 1272 (11th Cir.2004); FED. R. BANKR.P. 7017 (the trustee is the real party plaintiff). This means that upon the filing of a bankruptcy petition, the debtor's legal claims (*e.g.,* causes of action) become "property of the estate" and the bankruptcy trustee becomes the real party in interest—not the debtor. FED. R. BANKR.P. 7017. A dishonest debtor's act to conceal claims cannot thwart the bankruptcy trustee on behalf of the § 541(a) estate and innocent creditors from later seeking to exercise the trustee's rights to that

claim, even if the debtor could not do so in his or her own capacity, "[J]udicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Reed v. City of Arlington,* 650 F.3d 571, 574 (5th Cir.2011). The different application of judicial estoppel to *the debtor* and to the representative of *property of the estate,* the trustee (*i.e.,* the real party in interest), correctly recognizes the interplay between the two separate entities and the Bankruptcy Code's different treatment of each depending upon which goal the nation's bankruptcy laws is trying to further: a debtor's fresh start and equitable distribution to creditors similarly situated.

Section 554(a) of the Bankruptcy Code allows the trustee (or chapter 11 debtor in possession) to abandon any *property of the estate.* The effect of abandonment is to remove property from the § 541(a) estate and return it to *property of the debtor* status. Section § 554(c) causes *property of the estate* that is scheduled but not administered at the closing of the case to be abandoned to *the debtor.* Section § 554(d) provides: "Unless the court orders otherwise, *property of the estate* that is not abandoned under this section and that is not administered remains *property of the estate.*"

Property abandoned under this section ceases to be part of the estate. See H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 5, reprinted in 1978 U.S.Code Cong. & Admin.News at 6299. ("Property ceases to be property of the estate, such as by sale, abandonment, or exemp-

tion."). It reverts to the debtor and stands as if no bankruptcy petition was filed. *See Brown v. O'Keefe,* 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937); *Wallace v. Lawrence Warehouse Co.,* 338 F.2d 392, 394 n. 1 (9th Cir. 1964); [*In re*] *Dewsnup,* 87 B.R. [676] at 681 [ (Bankr.D.Utah 1988) ]. Following abandonment, "whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right." *Dewsnup,* 87 B.R. at 681.

*In re Dewsnup,* 908 F.2d 588, 590 (10th Cir.1990), *aff'd sub nom. Dewsnup v. Timm.,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

### *Termination of the Automatic Stay*

█ As an alternative form of relief, the U.S.A. requests that any automatic stay found by this court to exist be terminated "for cause" under § 362(d)(1) to allow for continued collection and the enforcement of the criminal restitution judgments against both the Debtor, in personam, and "property of the estate." The U.S.A. asks for termination of the stay as it relates to all assets here but more particularly asks alternatively for termination of the automatic stay as is relates to the IRA account and two of the three automobiles listed in the Debtor's Schedule B.[13] As discussed earlier, the bankruptcy court has exclusive jurisdiction and authority over "property of the estate." As the IRA and automobiles are property of the estate, the court has exclusive jurisdiction over these properties and all other "properties of the estate." "Property of the estate" is the life blood of the "estate" that in appropriate cases allows a debtor to reorganize and to fund repayment plans and make distri-

---

**13.** As noted, the Debtor's Schedule B–25 reveals that he has three automobiles: a 2006 Highlander valued at $6,000.00, a 2001 So-

lara valued at $2,000.00, and a 1999 Infiniti 130 valued at $900.00. These three automobiles are properties of the § 541(a) estate.

butions to creditors (unless stay relief is granted earlier and property of the estate is abandoned). If property of the estate is adequately protected, provides benefit to the bankruptcy estate, and is necessary for an effective reorganization, the court will likely not terminate the stay without "cause" being demonstrated by the moving party. The Bankruptcy Code provides no statutory definition of what constitutes "cause" under § 362(d)(1); therefore, bankruptcy courts must discretionarily determine whether cause exists on a case-by-case basis turning on the court's evaluation of a multitude of factors. *In re Laguna Associates Ltd. Partnership,* 30 F.3d 734, 737–738 (6th Cir.1994).

■ As to *all* properties of the § 541(a) estate, the U.S.A. has not carried its required burden of proving cause by a preponderance of the evidence under § 362(d)(1). Again, it is noted that assets which benefit the estate (*e.g.,* postpetition wages or commissions) will be necessary to fund an effective reorganization plan and any distribution to creditors. This includes earnings (commissions) that become property of the estate under § 1306 (or § 1115). Debtor works at a local automobile dealership and earnings from this employment become "property of the estate." § 1306. Much of these earnings may go to fund the repayment plan, which includes distributions to all unsecured creditors *including* the U.S.A. on its claim of criminal restitution. Without property that benefits the estate and the postpetition earnings from the Debtor's employment, the Debtor's repayment plan likely would not be feasible and the case would have to be dismissed to the possible detriment of other creditors. Accordingly, the court de-

nies at this time the U.S.A.'s request to terminate the automatic stay as to *all* assets. Simply put, this case under the Bankruptcy Code transcends the Debtor and the U.S.A.; there are other parties in interest to consider (*e.g.,* the general, unsecured non-priority creditors).

■ As to the IRA account, the U.S.A. indeed has carried its burden of proving "cause" to terminate the automatic stay. A debtor is entitled to claim exemptions from property of the estate. *See* 11 U.S.C. § 522(b); Schedule C. "No property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate." *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). The State of Tennessee has opted out of the federal exemptions in favor of its own state exemptions. TENN. CODE ANN. § 26–2–112. Debtor claims the IRA is exempt under TENN. CODE ANN. § 26–2–111(D); however, the court believes the IRA ordinarily is more appropriately exempted under TENN. CODE ANN. § 26–2–105. TENN. CODE ANN. § 26–2–105 entitled "Retirement and Pensions" allows any interest of any participant or beneficiary in a retirement plan which is qualified under 26 U.S.C. § 408[14] to be exempt from any and all claims of creditors. Here, regardless of the applicable Tennessee exemption, there is no dispute that the IRA qualifies for an exemption. As is such, the Debtor may claim the IRA as exempt from property of the estate and, in fact, has done so by scheduling the IRA as exempt for $47,000 in Schedule C. No party has objected to this claimed exemption; therefore, the claimed IRA is exempt, subject to the claims of the U.S.A. 11 U.S.C. § 522(1). Since the IRA is exempt from claims of other creditors in this

---

**14.** Internal Revenue Code of 1986 § 408 defines Investment Retirement Accounts or IRAs.

title 11 case, the IRA does not have to be used by the Debtor to fund distributions to creditors under a repayment or reorganization plan.[15] Here, the Debtor's proposed chapter 13 plan does not contemplate any creditors sharing in the Debtor's IRA.

■ Section 522(c) provides: "property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case." However, this is subject to four exceptions including § 522(c)(2)(B), which excepts "a debt secured by a lien that is a tax lien, notice of which is properly filed." As if interpreting the interplay between title 18 and title 11 were not enough, we are now forced to deal with the Internal Revenue Code of title 26 to determine the lien status of the criminal restitution due to 18 U.S.C. § 3613(c). An order of restitution is a lien in favor of the U.S.A. on all property and rights to property of the person [ordered to pay restitution] as if the liability of the person [ordered to pay restitution] were a liability for a tax assessed under the Internal Revenue Code of 1986. 18 U.S.C. § 3613(c) (substituting "fined" for "ordered to pay restitution" pursuant to § 3613(f)). Therefore, an order of criminal restitution operates as a tax lien and, thus, can be enforced against exempt property. 11 U.S.C. § 522(c)(2)(B).

It is well established that the Supremacy Clause "provides the underpinning for the Federal Government's right to sweep aside state-created exemptions" in the face of a tax liability. *U.S.A. v. Rodgers*, 461 U.S. 677, 701, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983); *see also Herndon v. U.S.A.*, 501 F.2d 1219, 1222 (8th Cir.1974); *U.S.A. v. Heffron*, 158 F.2d 657, 659 (9th Cir.1947); *Sham-*

*baugh v. Scofield*, 132 F.2d 345, 346 (5th Cir.1942).

*U.S. v. Hyde*, 497 F.3d 103, 108 n. 7 (1st Cir.2007).

■ As the U.S.A. has a lien claim that can be enforced against the exempt IRA and because the IRA will not be used to fund any repayment or reorganization plan or provide distributions to creditors, the court finds, considering a totality of the particular facts and circumstances that "cause" under § 362(d)(1) exists for the automatic stay to be terminated as to the IRA. The concept of equality of treatment among creditors is not destroyed here because the U.S.A. is not similarly situated to other unsecured creditors (except for any § 522(c) creditors, which apparently do not exist here). It would be patently unfair under these facts and circumstances to allow the Debtor to save for his retirement utilizing the IRA at the expense of his restitution creditors. The § 362(a) automatic stay is intended to be a shield protecting debtors and the § 541(a) estates and should not be used as a sword for their enrichment. *See, for example, In re McHenry*, 179 B.R. 165 (9th Cir. BAP 1995). The integrity of the bankruptcy system is an underlying fundamental consideration here. Allowing the Debtor to shield the IRA would undermine the integrity of the bankruptcy system. The U.S.A. may for cause now seek to collect and enforce the criminal restitution orders against the IRA pursuant to its relevant statutory authority under title 18 and with the express authorization of the bankruptcy court.

■ Likewise, the U.S.A. has carried its required burden to demonstrate cause under § 362(d)(1) to terminate the auto-

---

**15.** It is noted that the Debtor's chapter 13 plan proposes to pay $470.00 per month to the Chapter 13 trustee for a period of 60 months to be disbursed to allowed claims of unsecured, nonpriority creditors on a percentage basis.

matic stay as to two of the three automobiles of the Debtor. Section 26–2–103 of the Tennessee Code Annotated allows a debtor to exempt personal property with an aggregate value of $10,000. Here, among other personal properties, the Debtor has used this exemption to claim $1,500 of the 2006 Highlander as exempt. The 2006 Highlander is valued at $6,000 per Schedule C. The U.S.A. argues that two of the three automobiles are not necessary for the Debtor's reorganization. This court agrees. The U.S.A., alternatively, does concede that one automobile will be necessary for § 363 "use" by the Debtor to transport him to and from his place of employment, etc. so that he can maintain his employment and his current earnings (commissions). These postpetition earnings (commissions) are property of the estate under § 1306 (or § 1115) and will potentially fund the repayment or reorganization plan. Based upon the totality of circumstances, the court agrees with the U.S.A. and determines that the automatic stay should be terminated as to two of the Debtor's three automobiles. Debtor may pick and choose which one of the three automobiles will remain property of the estate for the Debtor's "use" under § 363 and remain subject to the automatic stay.

Finally, the court also notes that the U.S.A.'s unpaid claim/debt appears to be nondischargeable under 11 U.S.C. § 523(a)(13), although such nondischargeable judicial determination is not expressly being made today; this issue will be saved for another day, if at all. In addition, the court is not making a determination in this Memorandum, Order, and Notice as to whether this case should be dismissed, whether plan confirmation should be denied, or whether the chapter 13 case may be converted to a case under chapter 11.

This result assures that "property of the estate" by operation of law has been divested from the Debtor and is being administered according to applicable law.

## CONCLUSIONS

Based on the foregoing and considering the case record as a whole, IT IS ORDERED AND NOTICE IS HEREBY GIVEN THAT:

1) The § 362(a) automatic stay here does not apply to protect *the debtor,* in personam, against the actions of the U.S.A.;

2) The § 362(a) automatic stay does temporarily apply to protect *property of the estate* as defined under §§ 541(a) and 1306 against the U.S.A. efforts at this time to collect and enforce its prepetition criminal restitution orders;

3) "Cause" exists under § 362(d)(1) to terminate the automatic stay in favor of the U.S.A. regarding the IRA and two of the three automobiles described above;

4) Within 14 days from the entry of this Order, the Debtor shall file a statement with the court with copies to the Assistant U.S. Attorney and the Chapter 13 Trustee regarding which one of the three vehicles the Debtor prefers to "use" under § 363 to get to and from work, etc.; and

5) The Bankruptcy Court Clerk shall cause a copy of this Order, Memorandum, and Notice to be sent to the following:

Barbara M. Zoccola, Esq.

Assistant U.S. Attorney

167 N. Main St., # 800

Memphis, TN 38103

Thomas C. Fila, Esq.

Attorney for Debtor

200 Jefferson Ave., # 925

Memphis, TN 38103

John E. Dunlap, Esq.

Attorney for Debtor

1684 Poplar Ave.

Memphis, TN 38104

Mr. James D. Robinson, Jr.

Chapter 13 Debtor

7873 Shadowland Cove

Memphis, TN 38125

George W. Stevenson, Esq.

Standing Chapter 13 Trustee

5350 Poplar Ave., # 500

Memphis, TN 38119

Chontele McIntyre, Esq.

Attorney for Chapter 13 Trustee

5350 Poplar Ave., # 500

Memphis, TN 38119

United States Trustee, Region 8

Office of the U.S. Trustee

One Memphis Place

200 Jefferson Ave., # 400

Memphis, TN 38103